```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF MISSISSIPPI
                    JACKSON DIVISION

CERTAIN UNDERWRITERS AT LLOYDS,
LONDON, SUBSCRIBING TO POLICY
UP01US361029
                                                PLAINTIFFS

VS.
                                CIVIL ACTION NO. 3:04CV540LN


MAGNOLIA MANAGEMENT CORPORATION,
BRANDON LIVING CENTER LLC D/B/A
BRANDON COURT, RANKIN COMMUNITY
CARE CENTER, LLC D/B/A BRANDON COURT,
BRANDON COURT, LLC, SANDRA CHAMPION
BALL, MELISSA JOHNSTON, TRACY ROBINSON
GARCIE, COLLEEN CAMP, AND JOHN DOES A-Z       DEFENDANTS
```

MEMORANDUM OPINION AND ORDER

This cause was tried to the court, sitting without a jury, commencing May 30, 2006, and the court, having considered the testimony and exhibits presented and the arguments of the parties, makes the following findings and conclusions.

The heirs of Brenda Blough filed a wrongful death lawsuit in the Circuit Court of Rankin County, Mississippi against Magnolia Management Corporation, Brandon Living Center LLC d/b/a Brandon Court, and a number of Brandon Court employees. They alleged that Ms. Blough's death in March 2002, while she was a resident of the Brandon Court Nursing Home, was proximately caused by various acts and omissions of Brandon Court and its staff relating to their alleged failure to provide adequate and proper care to Ms.

Blough.[1]  At the time of the events giving rise to that action, Brandon Court and its employees were insured under a policy of liability insurance issued by Lloyds to Magnolia Management.  Upon notification of the underlying action, Lloyds assumed defense of the action under a reservation of rights.  Then, in July 2004, after Brandon Court employee Sandra Ball pleaded guilty in the Circuit Court of Rankin County, Mississippi to manslaughter by culpable negligence in causing the death of Brenda Blough, Lloyds commenced the present declaratory judgment action seeking an adjudication that it has no duty to defend or indemnify any defendant in the underlying action in view of its policy's criminal acts exclusion, which provides:

---

[1]   In that case, styled <u>Ellen B. Morgan and John W. Blough, Jr., as the Sole Wrongful Death Beneficiaries of Brenda Blough, Deceased, and on Behalf of her Estate v. Brandon Court, Sandra Ball, Melissa Johnston, Tracy Robinson Garcie, Colleen Camp, Dr. Michael Albert and John Does A-Z</u>, No. 2004-208, the plaintiffs allege that Brenda Blough, a brittle diabetic, was dependent on the nursing home staff for administering medication, providing a diet in conformity with the orders of her treating physician and monitoring her blood sugar level and administering insulin and other medications in accordance with her treating physician's orders.  The complaint charges that as a result of the negligence and gross negligence of the defendants, Ms. Blough suffered episodes of hyperglycemia and urinary tract infections, and had toxic levels of certain prescription medications in her system at the time she died.  Ms. Blough's heirs allege that "[t]he extent and severity of [defendants'] neglect caused Brenda Blough to pass away on March 26, 2002."

```
Section I – Coverages
3.   Exclusions
. . .
(D) Exclusions Applicable to ALL INSURING AGREEMENTS:
This policy shall not provide any coverage under Insuring
Agreements (A), (B) or (C) for any "Occurrence", offense or
"Claim" based upon, arising out of, directly or indirectly,
relating to or in any way involving:
. . .
     15.  A criminal act . . . committed by any "Insured."
```

By memorandum opinion and order dated June 5, 2005, this court denied a motion by Lloyds seeking summary judgment against all defendants based solely on the guilty plea of Sandra Ball. The court concluded that Ball's guilty plea was admissible against her and that her plea, coupled with her failure to provide any reason for the plea, "established the fact of a criminal act and a resulting exclusion of coverage <u>for Ball</u>." The court held, however, that Ball's guilty plea was not admissible against Ball's co-defendants, and that therefore, in order to avoid coverage of Ball's co-defendants on the basis of the criminal act exclusion, "Lloyds is required to establish by independent proof, i.e., proof other than Ball's guilty plea, each element of the crime of manslaughter by culpable negligence." In the court's opinion, Lloyds has now done so, and therefore is entitled to the requested declaratory judgment.

To successfully invoke the criminal acts exclusion, the burden is on Lloyds to prove that (1) Sandra Ball's acts and/or omissions with regard to the nursing care provided Brenda Blough

3

amounted to "culpable negligence,"[2] and that (2) such acts and/or omissions proximately caused Ms. Blough's death.  In the court's opinion, Lloyds has sustained its burden as to both of these elements.

As an initial matter, the court rejects defendants' argument that Lloyds is required to prove these elements beyond a reasonable doubt.  Proof beyond a reasonable doubt is a standard reserved, with very few exceptions, for criminal prosecutions, where the defendant is subject to potential criminal punishment.  Although this case involves an exclusion for an insured's criminal act, that does not mean that the standard of proof applicable in a criminal prosecution applies here.  Defendants have cited no case applying the "reasonable doubt" standard in this context, and this court has found no case requiring an insurer to prove applicability of a policy's exclusion for an insured's criminal acts beyond a reasonable doubt.

Having said that, while the standard of proof in most civil cases is "preponderance of the evidence," the heightened "clear and convincing evidence" standard may apply where the civil case

---

[2]   Prior to the date scheduled for trial, defendants moved to preclude Lloyds from presenting evidence to show that criminal acts of other defendants proximately caused Ms. Blough's death. The court granted the motion upon finding that the sole basis alleged in its complaint for Lloyds' invoking the criminal acts exclusion was the fact that Sandra Ball had pled guilty to a crime.  Accordingly, the focus herein is on Sandra Ball's acts and omissions, and not the acts and omissions of any other defendant.

4

involves an allegation of the commission of a crime.  Cf. McGory v. Allstate, 527 So. 2d 632, 636 (Miss. 1988) (holding that "when an insurer seeks to avoid coverage under a fire insurance policy charging that the insured has been guilty of civil arson, the insurer must prove each element of its claim by clear and convincing evidence").  However, of which of these standards applies, the court is of the opinion that Lloyds has sustained its burden.

Brenda Blough died around 10:20 on the morning of March 26, 2002.  Sandra Ball was a registered nurse employed at Brandon Court, and had worked the 11:00 p.m. to 7:00 a.m. shift immediately preceding Ms. Blough's death.  Ms. Blough was a brittle diabetic, meaning her blood glucose (sugar) level was highly unstable and subject to extreme fluctuations, placing her at a very high risk for complications, including death.  It was for this reason her blood glucose level had to be closely monitored and the nursing home's staff physician, Dr. Albert, had instructed that he be contacted in the event Ms. Blough's blood sugar dropped below 60 or rose above 400.

During her shift preceding Ms. Blough's death, Ball was assigned to Ms. Blough's care, and as such, it was her duty to check Ms. Blough's blood glucose level and to contact Dr. Albert if it was above 400.  Having considered all the testimony and documentary evidence, it is evident to the court that one of two

things happened on Ball's shift:  Ball either failed to check Ms. Blough's blood sugar level altogether, or she checked it and found it to be over 400 and yet failed to contact Dr. Albert as per his instructions.[3]  The court considers it more likely that Ball simply did not check Ms. Blough's blood sugar; but in the court's opinion, in either case, her inaction amounted to "culpable negligence."

The Mississippi Supreme Court has defined culpable negligence as "'negligence of a degree so gross as to be tantamount to a wanton disregard of, or utter indifference to, the safety of human life.'"  Jones v. State, 678 So. 2d 707, 710-11 (Miss. 1996) (quoting Smith v. State, 197 Miss. 802, 818, 20 So. 2d 701, 706 (1945)).  See also Campbell v. State, 285 So. 2d 891, 893 (Miss. 1973) (holding that "culpable negligence . . . may be defined as the conscious and wanton or reckless disregard of the probabilities of fatal consequences to others as the result of the

---

[3]  During an investigation undertaken by the Mississippi Attorney General's office, Ball claimed that the first time she checked Ms. Blough's blood sugar with an AccuChek machine that night, she got a reading of 601.  Using a different AccuChek machine, she got a second reading of 632.  Ms. Ball told investigators that after getting this reading, and before going off duty that morning, she asked another nurse, Latrina Ross, to call Dr. Albert for instructions.  However, the evidence was uncontroverted that the highest number the AccuCheck machine would display was 599, and for any result above 599, the machine's display would simply read "hi."  Further, a check of the readings stored in the memory of the machines claimed to have been used by Ball revealed no readings of 601 or 632.  Moreover, Ross testified credibly at trial that Ball did not ask her to contact Dr. Albert.

willful creation of an unreasonable risk"); Evans v. State, 562 So. 2d 91, 95 (Miss. 1990) (stating that manslaughter by culpable negligence is "such gross negligence . . . as to evince a wanton or reckless disregard for the safety of human life, or such an indifference to the consequences of an act under the surrounding circumstances as to render such conduct tantamount to willfulness").  "Culpable negligence must be ascertained from the facts of each case, and no ironclad statement can be set forth as applicable to all classes of cases." Shumpert v. State, 2006 WL 1767283, *3 (Miss. June 29, 2006) (quoting Sims v. State, 149 Miss. 171, 115 So. 217, 219 (1928)).  However, "[t]he only requirement is recklessness or a willful disregard for an unreasonable risk."  Id. (citing Campbell, 285 So. 2d at 893).

According to the evidence adduced at trial, care of brittle diabetics requires that they be managed very carefully because they can quickly become acutely ill.  Based on her education and experience as a registered nurse, Sandra Ball knew or should have known this.  Indeed, the risk of an acute episode was the very reason Ms. Blough's blood glucose level had to be checked regularly and that Dr. Albert had instructed he be contacted in the event it rose above 400.  Yet Ball, the person charged with the primary care of Ms. Blough on the morning of her death, failed to check Ms. Blough's blood sugar, or perhaps checked it, found it

to be dangerously elevated and failed to call Dr. Albert.[4] The court finds that in either event, her inaction amounted to "negligence of a degree so gross as to be tantamount to a wanton disregard of, or utter indifference to, the safety of [Ms. Blough's] life." Jones, 678 So. 2d at 710-11.

However, to prove the exclusion applies, Lloyds must also prove that Ms. Blough died as a proximate result of Ball's acts and/or omissions. Lloyds contends that Ms. Blough died due to complications from hyperglycemia which are directly attributable to Sandra Ball's wanton failure to provide adequate nursing care, and submits that Ms. Blough's death was readily avoidable had Sandra Ball simply done her job. For their part, defendants maintain that there is insufficient evidence to identify a specific cause of death, and that the evidence thus does not support a finding that her death was causally related to any act or omission by Sandra Ball.

In support of its position that Ms. Blough's death resulted from complications from hyperglycemia, Lloyds adduced the testimony and autopsy reports of Dr. Stephen Hayne, the state medical examiner, and the testimony of Dr. Robert Evans, an expert in endocrinology, along with evidence as to Ms. Blough's condition

---

[4] There was evidence that Ball administered 10 units of Lantus prior to going off duty that morning. However, Lantus is a slow-acting insulin, and what was needed was a fast-acting insulin.

in the week preceding her death, focusing mostly on her condition, as observed by others, on the day and night before her death. Both Dr. Hayne and Dr. Evans opined that Ms. Blough's cause of death, to a reasonable degree of medical certainty, was hyperglycemia, due to diabetes. Citing the medical records, autopsy reports, Attorney General's report and descriptions of persons who saw Ms. Blough in the week prior to her death, both opined that she exhibited clinical manifestations of nonketotic hyperosmolar coma.[5] A number of witnesses who had contact with Ms. Blough described a marked decline in her condition in the week prior to her death. She became lethargic, developed black circles under her eyes and loss of coloration (was "ashy gray" according to a friend who visited with her the night before she died), exhibited a lack of coordination, and was constantly needing to urinate, classic symptoms of nonketotic hyperosmolar coma, which is an often fatal complication of hyperglycemia. Moreover, while not fully supported by the medical records, it was also reported by her family that Ms. Blough's blood glucose levels had been over 400 for two weeks. In addition, there is evidence in the record which establishes that a urinalysis obtained a week prior to her death reflected a glucose level in her urine of 1000, a "critical"

---

[5] As explained by Dr. Evans, this syndrome typically develops after an extended period of hyperglycemia in which a person becomes extremely dehydrated.

level according to Dr. Evans,[6] and credible evidence which establishes that Ms. Blough's blood glucose level was 574 on the evening prior to her death.[7]

For their part, defendants offered the testimony of the expert, Dr. Gerald Luizza, who did not disagree that Ms. Blough's death could be classified as "consistent with" hyperglycemia, but insisted that the objective evidence simply did not support a finding as to a specific cause of death. Dr. Luizza pointed out that Ms. Blough suffered from a number of medical/health conditions that could have caused or contributed to her death, and contended that the evidence did not support choosing one condition as a cause of death over other possible causes. According to Dr. Luizzi, neither he nor anyone else could state to a reasonable degree of medical certainty that Ms. Blough died from

---

[6] There was a dispute between plaintiff's and defendants' experts as to the relevance of the level of glucose in Ms. Blough's urine a week prior to her death toward establishing the likely blood glucose level at the time of her death. Defendants' expert, Dr. Luizza, maintained that the level of glucose in one's urine may not correlate to the level of glucose in the blood, and that certainly, the level of glucose in urine on a given date will provide no information as to the level of glucose in the blood a week later. Even if that were true, and it may well be, even Dr. Luizza appeared to agree that an extremely high level of glucose in the urine might reasonably lead one to assume that the blood glucose level is high, as well.

[7] Although Jerra Graham, the nurse on duty the shift before Sandra Ball's, told investigators she had checked Ms. Blough's blood glucose around 7:00 p.m. the evening of March 25 and gotten a reading of 310, a friend of Ms. Blough's who was in the room at the time testified credibly that the reading she saw on the machine was 574.

10

hyperglycemia, and indeed, he took the position that if forced to choose a probable cause of death, he would say it was a heart event of some sort, given that the autopsy report reflected that she had an enlarged heart at the time of her death.

Having considered all the evidence, the court is convinced that Ms. Blough's death was a result of her diabetic condition, and therefore, having also found that Sandra Ball's acts/and omissions amounted to culpable negligence, concludes that Lloyds has sustained its burden to prove that the criminal act exclusion applies.

Accordingly it is ordered that Lloyds is entitled to a declaratory judgment that its policy provides no coverage for the underlying lawsuit and that it has neither duty to defend nor indemnify defendants in connection with that action.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 23rd day of August, 2006.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE